UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LARRY JAVIER TORREZ ARCE,

                                 Petitioner,                    9:26-cv-501
                                                      (ECC)

v.

TODD BLANCHE, in his official capacity as Acting
Attorney General;[1] JAMES BAUSCH, in his official
capacity as Acting Deputy Field Office Director,
Buffalo Field Office, U.S. Immigration & Customs
Enforcement; PHILIP RHONEY, in his official
capacity as Deputy Field Office Director, Buffalo
Field Office, U.S. Immigration & Customs
Enforcement; TODD LYONS, in his official
capacity as Acting Director, U.S. Immigration and
Customs Enforcement; and MARKWAYNE
MULLIN, in his official capacity as Secretary of
Homeland Security,

                                 Respondents.

---

Matthew K. Borowski, Esq., *for Petitioner*
Karen Folster Lesperance, *Assistant United States Attorney, for Respondents*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

On March 27, 2026, Petitioner Larry Javier Torrez Arce (Arce), a citizen of Nicaragua who has been present in the United States since March 14, 2024, was taken into custody by Immigration and Customs Enforcement (ICE).  Petition (Pet.) ¶¶ 2, 7, Dkt. No. 1.  On March 27, 2026, while he was detained at the Border Patrol facility in Oswego, New York, Petitioner filed a petition for

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Acting Attorney General, Todd Blanche, has been substituted for his predecessor, Attorney General Pamela Bondi.  The Clerk is directed to amend the docket accordingly.

a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. *Id.* at ¶¶ 7, 13. Petitioner seeks immediate release, or in the alternative, a bond hearing, and attorney's fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412. *Id.* at 15-16; *see also id.* at ¶ 13.

On March 28, 2026, the day after the Petition was filed, the Court issued an Order directing Respondents to show cause why the Petition should not be granted, setting a briefing schedule, scheduling oral argument for April 10, 2026, and prohibiting Respondents from moving Petitioner outside the Northern District of New York while the Petition is pending. Dkt. No. 2. On March 27, 2026, as requested by the parties, the Court modified its prior order to enjoin Respondents from moving Petitioner outside the jurisdiction of the Northern or Western Districts of New York until this civil action is resolved. Dkt. No. 5.

After considering briefing from both parties, Dkt. Nos. 1, 6, 8, and arguments made during a hearing on April 10, 2026, the Court issued an oral decision during the hearing and a limited order later that day granting the Petition and ordering Petitioner's immediate release. Dkt. Nos. 10, 11. This decision and order provides more detailed reasons for those orders and addresses Petitioner's request for Equal Access to Justice Act fees and costs.

## I.      Background

Petitioner, a citizen of Nicaragua, entered the United States at the Miami International Airport on March 14, 2024, and was paroled into the United States under the NHP-Nicaraguan Humanitarian Parole program. Pet. ¶ 2; Response (Resp.) at 1, Dkt. No. 6. He came to the United States to join his wife who had been in the United States since September 2023. Pet. ¶ 2.

On March 13, 2025, Petitioner filed an application for asylum, and he was issued a work permit. Pet. at ¶ 6. At the April 10th hearing, counsel for both parties represented that the asylum application is still pending. Petitioner's parole was terminated effective June 12, 2025 due to

Executive action terminating the program under which it was granted.  Resp. at 1, 3-4.  If Petitioner's parole had not been terminated, it would have expired on March 14, 2026.  *Id.* at 1. On March 27, 2026, Petitioner was taken into custody by ICE at a laundromat near his home in Auburn, New York. Pet. ¶ 7.  At the April 10th hearing, counsel for Respondents represented that Arce was taken into custody during a targeted enforcement action.

Petitioner was detained from March 27, 2026 through April 10, 2026, the day that this Court ordered his release.  Pet. ¶ 7; Dkt. Nos. 10-12.

## II.    JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  In addition, "'[f]ederal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention.'" *Gaspar v. Akshar,* 9:26-cv-118 (BKS), Dkt. No. 13, at 5 (N.D.N.Y. Feb. 17, 2026)  (quoting *Lopez v. Sessions,* No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim,* 538 U.S. 510, 516-17 (2003)). "Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to 'discretionary judgment,' 'action,' or 'decision' by the Attorney General with respect to either detention or removal." *Mahmodi v. Marich*, No. 25-cv-6762, 2026 WL 113473, at *2 (W.D.N.Y. Jan. 15, 2026) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (other citations omitted)).

## III.    DISCUSSION

### A.  Statutory Basis for Detention

Petitioner argues that the applicable statute for his detention is 8 U.S.C. § 1226(a). Pet. ¶ 41. "Detention pending adjudication of removal under Section 1226 is discretionary and affords noncitizens detained thereunder the right to an initial determination as to eligibility for release and the opportunity for a bond hearing upon detention." *Tumba Huamani v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *2 (S.D.N.Y. Nov. 4, 2025) (citing 8 C.F.R. § 1236.1(d)(1)).

In contrast, Respondents argue that 8 U.S.C. § 1225(b)(2)(A) applies because Petitioner "entered the United States at a place other than a lawful port of entry and without document[s] authorizing lawful entry." Resp. at 7 n.1. Detention under that provision is mandatory "with rare exceptions not relevant here." *Cardenas v. Almodovar*, No. 25-cv-9169, 2025 WL 3215573, at *1 (S.D.N.Y Nov. 18, 2025).

As Respondents acknowledge, "this Court has previously rejected the government's interpretation of the applicability of [§ 1225(b)(2)(A)]," and "the Court's analysis in those prior cases would govern the outcome here." Resp. at 7 n.1. In addition, after Respondents submitted their opposition, the Second Circuit held that a noncitizen who was detained more than 20 years after entering without inspection and admission was not "seeking admission" when he was arrested and that "Section 1226(a) plainly applies to noncitizens . . . who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *da Cunha v. Freden,* --- F.4th ---, 2026 WL 1146044, at *5 (2d Cir. Apr. 28, 2026).

The Court therefore concludes that Petitioner, who was paroled into the United States approximately two years before his arrest, was not seeking admission when he was arrested, and Section 1225(b)(2)(A) therefore does not apply. *See Perdomo Perez v. Akshar,* No. 9:26-cv-120, Dkt. No. 19 at 4-5 (N.D.N.Y. Mar. 5, 2026) (concluding that the petitioner, who was paroled into the United States more than two years before his arrest, was not seeking admission when he was

4

arrested and that Section 1226(a), not Section 1225(b)(2)(A) applies) (citations omitted). *See also Olivares v. ICE, et al.,* No. 9:26-cv-203 (AMN), 2026 WL 686090, at \*7 (N.D.N.Y. Mar. 11, 2026) (same where the petitioner, "more than two years ago, made an appointment with immigration authorities, presented himself at a port of entry, was paroled into the country, and whose asylum application remains pending").

Respondents, however, alternatively argue that Petitioner is nevertheless subject to mandatory detention under 8 U.S.C. § 1225(b)(1) because he was paroled into the United States pursuant to the humanitarian parole provision, and when his parole ended he was "returned to the custody from which he was paroled." Resp. at 5 (citing 8 U.S.C. § 1182(d)(5)(A)). They assert that when his parole ended, he therefore became an arriving alien seeking admission subject to mandatory detention under Section 1225(b)(1)(A)(i). *Id.* Respondents also rely on the agency definition of "arriving alien" in 8 C.F.R. §§ 1.2, 1001.1(q) as well as Second Circuit cases interpreting those regulations, *see* Resp. at 6 (citing *Ibragimov v. Gonzales,* 476 F.3d 125, 137 n.17 (2d Cir. 2007)), while acknowledging that those cases were decided when *Chevron* deference was required and that "many of the district courts in the Second Circuit have rejected the agency's definition of 'arriving alien' in 8 C.F.R. § 1.2 as including aliens whose Section 1182(d)(5)(A) parole has expired," Resp. at 8 (collecting cases). In fact, Respondents cite no decisions supporting their position since *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 394 (2024) was issued.

Petitioner responds that he "was released on parole by Respondents after arriving lawfully at a port-of-entry . . . after having been granted advance permission to fly to the United States, pursuant to a grant of parole" and that "[c]ourts in this circuit have held, under very similar facts, that post-parole re-detention falls under 1226(a)." Dkt. No. 8 at 2 (citing *Ivonin v. Rhoney,* No. 6:25-cv-6673, 2026 WL 199283 (W.D.N.Y. Jan. 26, 2026)); *Campbell v. Amondovar,* 25-cv-9509,

2025 WL 3538351 (S.D.N.Y. Dec. 10, 2025); *Hyppolite v. Noem,* No. 25-cv-4304, 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025)).  In addition, Petitioner argues that "[c]ourts have soundly rejected" the arriving alien definition in the agency regulations.  Dkt. No. 8 at 3 (citing, as an example, *de la Cruz v. Rhoney,* 6:25-cv-6699, 2026 WL 891658 (W.D.N.Y. Apr. 1, 2026)).

"[U]nder Section 1225(b)(1), people subject to expedited removal are subject to mandatory detention."  *Rodriguez-Acurio v. Almodovar,* 811 F. Supp. 3d 274, 293 (E.D.N.Y. 2025).  In addition, as relevant here, "Section 1225(b)(1) governs noncitizens: (1) who are inadmissible for lack of proper entry documents or because they engaged in fraud or a willful misrepresentation of a fact on their application for admission; *and* (2) who fall within . . . the 'Arriving Aliens Provision'" as noncitizens who "'[are] arriving in the United States.'" *Id.* at 291, 293 (quoting 8 U.S.C. § 1225(b)(1)(A)(i) (additional citation omitted)).  Humanitarian parole under Section 1182(d)(5)(A) is the only exception for such mandatory detention.  *Id.* at 294 (citing *Jennings,* 583 U.S. at 300).

Pursuant to Section 1182(d)(5)(A), "an applicant for admission detained under Section 1225(b)(1) . . . 'may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'"  *Id.* at 294 (quoting *Jennings,* 583 U.S. at 288).  *See also* 8 U.S.C. § 1182(d)(5)(A) (authorizing the Secretary of Homeland Security to, "in his discretion parole into the United States temporarily . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States. . . .'"  *Id.* at 11.  "[B]ut such parole of such alien shall not be regarded as an admission of the alien," and

> when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).  Finally, "a Section 1182(d)(5)(A) parolee's 'physical presence within the United States cannot be said to be unlawful or illegal because it is authorized by the Attorney General and parole has long been understood to constitute lawful status.'"  *Rodriguez-Acurio,* 811 F. Supp. 3d at 294 (quoting *United States v. Balde*, 943 F.3d 73, 84 (2d Cir. 2019)).

According to agency regulations, "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked."  8 C.F.R. § 1.2.  *See also* 8 C.F.R. § 1001.1(q) (as relevant here, "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.").  Since the Supreme Court's decision in *Loper Bright Enters. v. Raimondo,* courts no longer defer to agency statutory interpretation and instead "must exercise independent judgment in determining the meaning of statutory provisions," even though they may still "seek aid from the interpretations of those responsible for implementing particular statutes."  603 U.S. 369, 394 (2024).

After carefully considering the government's arguments, for the reasons articulated by other district courts in this Circuit, this Court concludes that the plain meaning of "arriving," "arrival," and "arrive," "appear to refer to a process that occurs upon physical entry into the United States, 'not an interminable . . . status' that attached to a noncitizen upon arrival."  *Rodriguez-Acurio,* 811 F. Supp. 3d at 306; *see also De la Cruz,* 2026 WL 891658, at *7 (agreeing with *Rodriguez-Acurio*); *Qasemi v. Francis,* No. 25-cv-10029, 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025) (same).  *See also id.* ("there can be no doubt that upon his parole into the interior of the country, [the petitioner] had arrived in the United States and was no longer a noncitizen arriving in the United States" and "[i]t would try any plain understanding of the term arrival to classify an

individual like [the petitioner] who has lived and worked in the United States for over a year prior to his re-detention as an arriving alien").

The regulatory definition of "arriving alien" articulated in 8 C.F.R. § 1001.1(q) does not alter this conclusion because, as other district courts in this Circuit have explained, it "runs counter to the clear and unambiguous statutory language." *De La Cruz,* 2026 WL 891658, at *8 (citing *Qasemi,* 2025 WL 3654098, at *6-8 (declining to defer to 8 C.F.R. § 1001.1(q) and interpreting Section 1225(b)(1)(A)(i) according to its plain language); *Rodriguez-Acurio,* 811 F. Supp. 3d at 307-08 (same) (additional citations omitted). *See also id.* at 302 ("Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal").

As a result, given that Petitioner entered the United States approximately two years before he was arrested, he was not "arriving" in the United States when he was arrested, and Section 1226(a), not Section 1225(b)(1) applies. *See id.* at 307 (concluding that a noncitizen initially detained in Texas after illegally entering the United States who was then paroled into the United States under Section 1182(d)(5)(A) was not arriving in the United States more than four years later when she was arrested); *see also Qasemi,* 2025 WL 3654098, at *12 (concluding that "any determination as to [the petitioner's] detention must be conducted under the discretionary framework of Section 1226(a), which 'governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal'" and "[t]hat language describes [the petitioner], who is undoubtably within the United States pending the adjudication of his asylum claim."); *id.* at *11 (noting that "[e]very court that this Court is aware of that has considered the question has determined the same") (collecting cases); *Covelli-Chapparo v. Bondi,* --- F. Supp.

8

3d ---, 2026 WL 118842, at *6 (E.D.N.Y. Jan. 15, 2026) (concluding that Section 1225(b)(1) was not applicable where the petitioner was paroled into the United States under Section 1182(d)(5)(A) more than three years before his arrest and had a pending asylum petition); *Cabrera-Lopez v. Hyde,* No. 2:26-cv-17, 2026 WL 540131, at *6 (D. Vt. Feb. 26, 2026) (same where the petitioner was paroled into the United States under Section 1182(d)(5)(A) more than two years before her arrest); *Ruiz v. Trump,* No. 2:26-cv-12, 2026 WL 323254, at *5 (D. Vt. Feb. 6, 2026) (same where the petitioner was paroled into the United States under Section 1182(d)(5)(A) more than two years before his arrest).

### B.     Required Due Process

The next question is whether Petitioner's detention violates due process. Noncitizens, like Petitioner, are protected by the Fifth Amendment's Due Process Clause guaranteeing that they cannot be deprived of liberty "without due process of law." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. In addition, that liberty interest protects people from detention without "notice of the case against him and opportunity to meet it." *Mathews v. Eldridge,* 424 U.S. 319, 348 (1976). "Habeas review is available to challenge 'the lawfulness of detention when it is first imposed' as well as 'to challenge whether, at some point, an ongoing detention has become unlawful.'" *Gaspar,* 2026 WL 699369, at * 7 (quoting *Velasco Lopez v. Decker,* 978 F.3d 842, 850 (2d Cir. 2020)). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Velasco Lopez,* 978 F.3d at 850).

9

Courts apply the three-factor balancing test articulated in *Mathews*: "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gaspar,* 2026 WL 699369, at *8 (quoting *Velasco Lopez,* 978 F.3d at 850) (in turn quoting *Mathews,* 424 U.S. at 335)).

Regarding the first factor, Petitioner has established a liberty interest in being released from imprisonment. *See Crespo Tacuri v. Genalo,* No. 25-cv-6896, 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026) (concluding that Petitioner had a "cognizable private interest in being freed from unlawful detention") (citing *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government.") (additional citations omitted)).

Regarding the second factor, Respondents have not provided any evidence that Petitioner had an opportunity to post bond or argue for release on conditions. In addition, there is nothing in the record indicating that (1) Petitioner is a risk of flight or a danger to the community, or (2) anyone considered whether, given his specific situation, Petitioner was a risk of flight or a danger to the community. In fact, at the hearing, Respondents acknowledged that there is no evidence that anyone made an individualized assessment of Petitioner's situation, including whether he was a risk of flight or a danger to the community before his arrest, and that the only changed circumstances was the change in his parole status. As a result, there is a high risk of erroneous deprivation of Petitioner's liberty. *See, e.g., Rodriguez-Acuriao,* 811 F. Supp. 3d at 318 (concluding that [the petitioner's] detention without any notice or opportunity to be heard,

including an individualized assessment into whether she poses a flight or public safety risk, such as 'any change in circumstances' since her release on temporary parole in September 2021 establishes a high risk of erroneous deprivation of her protected liberty interest") (citations omitted).

Regarding the third factor, the Government certainly has a strong interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (alterations and citations omitted). On the other hand, as the Second Circuit recognized in *Velasco Lopez*, "the Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." 978 F.3d at 854. Under the specific circumstances of this case—where Respondents have presented no evidence that Petitioner is a danger to the community or a flight risk, Petitioner has been living in the United States for approximately two years, Petitioner was issued a work permit in 2025 after he filed an asylum petition, and his asylum petition is still pending—the Court concludes that the government's interest is minimal. *See Hassan v. Bondi,* 9:26-cv-319 (BKS), Dkt. No. 10 at *12 (concluding "that Respondent's interest in Petitioner's detention is minimal") (citing *Crespo Tacuri,* 2026 WL 35569, at *7 ("[T]he government's interest in continued detention is slight insofar as petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances")).

The Court therefore finds that Petitioner's detention violates his rights under the Due Process Clause of the Fifth Amendment.

## C.    Remedy

Petitioner seeks immediate release or, in the alternative, that he be released "pending a bond hearing to be held pursuant to 8 U.S.C. § 1226(a) within 7 days at which the government

bears the burden to demonstrate, by clear and convincing evidence, that the petitioner is a danger to the community or a flight risk." Pet. at 15-16. The Government responds that Petitioner is not entitled to a bond hearing because his detention is lawful. Resp. at 1.

The appropriate remedy is release. *See Gaspar,* Dkt. No. 13 at 18-19 (collecting cases); *Cardenas,* 2025 WL 3215573, at *3 (citing *Lopez Benitez,* 2025 WL 2371588, at *15 (reaching that result by applying the *Mathews* test); *Tumba Huamani,* 2025 WL 3079014, at *8-9 (reaching that result, but concluding that the *Mathews* test does not apply)); *see also Rodriguez-Acurio*, 811 F. Supp. 3d at 320-21 (concluding that where ICE detained the Petitioner "under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)," then "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity for relief because the detention without adequate pre-deprivation procedures has already been carried out.")

In addition, Respondents are enjoined from denying Petitioner bond in any subsequent proceeding on the grounds that he must be detained under 8 U.S.C. 1225(b)(2)(A) absent a change in relevant circumstances. *See Rodriguez-Acurio,* 811 F. Supp. 3d at 320-21 (concluding that "[t]his additional relief is necessary in order to ensure that the release of [Petitioner] pursuant to this Opinion and Order is not rendered meaningless" and, "[a]s a result, the relief ordered here falls within the 'core of habeas.'") (quoting *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 119 (2020)).

### D.    Attorney's Fees and Costs

Petitioner requests reasonable attorney's fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412, but has not yet filed an application. Pet. ¶ 13. Respondents did not address this request in their response.

12

"A party seeking fees under the EAJA must make an application within thirty days after final judgment in the action." *Barbour v. Colvin,* No. 12-cv-548, 2013 WL 7206218, at *1 (E.D.N.Y. Aug. 1, 2013) (citing 28 U.S.C. § 2412(d)(1)(B)). Under the EAJA, a final judgment is "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G). "The 30-day EAJA clock begins to run after the time to appeal that 'final judgment' has expired.'" *Melkonyan v. Sullivan,* 501 U.S. 89, 96 (1991). When the United States is a party, the deadline to appeal is 60 days after the entry of judgment. 28 U.S.C. § 2107.

Petitioner's request for attorney's fees and costs "is premature as a 'final judgment' has not yet been entered in the case." *United States v. $65,000 in U.S. Currency*, No. 1:13-cv-773 (NAM/RFT), 2019 WL 452043, at *4 (N.D.N.Y. Feb. 5, 2019). *See Barbour*, 2013 WL 7206218, at *1 (concluding that an application for attorney's fees was premature where the application was filed before the time for appeal had elapsed and that the Court therefore "lacked subject matter jurisdiction to entertain" the application). As a result, given that this portion of the Petition is premature, it is denied with leave to renew. Any application for attorney's fees and costs shall be filed no later than 30 days after the 60-day appeal period runs under Fed. R. App. P. 4(a)(1)(B), and any response is due within 21 days after Petitioner's application is filed.

For these reasons, it is

**ORDERED** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED** except that Petitioner's request for reasonable attorney's fees and costs under the Equal Access to Justice Act is **DENIED WITH LEAVE TO RENEW** because it is premature, and any application for attorney's fees and costs shall be filed no later than 30 days after the 60-day appeal period runs under Fed. R. App. P. 4(a)(1)(B), and any response is due within 21 days after Petitioner's application is filed; and it is further

**ORDERED** that the Court's prior Order, Dkt. No. 10, is incorporated; and it is further

**ORDERED** that the Clerk of the Court enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: May 21, 2026

Elizabeth C. Coombe
U.S. District Judge